IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONALD MALLORY        :
                      :
                      :
v.                    :   Civil No. CCB-11-2030
                      :
                      :
TOWN OF ELKTON, et al. :
                      :
                      :
                      :

## MEMORANDUM

Plaintiff Donald Mallory ("Mr. Mallory") was arrested for disorderly conduct and failure to obey a lawful order by Todd Finch ("Officer Finch"), an officer with the Elkton Police Department. Mr. Mallory brought suit against Officer Finch and the Town of Elkton (together, "the defendants"), alleging federal § 1983 claims, violation of the Maryland Declaration of Rights, and various state law claims arising from his arrest.  Now pending are a motion for summary judgment and a motion to dismiss for failure to respond to discovery requests and failure to prosecute the case filed by Officer Finch; and a motion for extension of time to file Rule 26 expert disclosures and modify the scheduling order, a motion to strike the defendants' motion to dismiss and to substitute plaintiff, and a cross-motion for summary judgment, all filed by Mr. Mallory. For the reasons stated below, Officer Finch's motion for summary judgment will be granted and the remaining motions will be denied.

## BACKGROUND

At approximately 1:45 a.m. on the morning of July 24, 2010, Donald Mallory was locking up the bar area of the Knights of Columbus Hall in Elkton, Maryland when he noticed an Elkton Police car at the periphery of the property. (Am. Compl., ECF No. 22, ¶ 8.) Mr. Mallory

1

was a bartender at the hall who resided in a second floor apartment at the rear of the building. (*Id.* at ¶ 7.) The police vehicle was being driven by Officer Todd Finch.

Mr. Mallory's and Officer Finch's accounts of the ensuing events differ substantially. As Mr. Mallory describes the incident, upon noticing Officer Finch's vehicle, he asked the officer to leave. (*Id.* at ¶ 8.) As Mr. Mallory headed upstairs to his apartment to retrieve his pet dog for a walk, Officer Finch drove into the back of the lot and told Mr. Mallory to "make [him]" go away. (*Id.*)

Mr. Mallory ignored Officer Finch and continued upstairs to retrieve his dog. (*Id.* at ¶ 9.) Once he had returned to the lot with his dog, he called 911 to complain about Officer Finch. (*Id.*) As Mr. Mallory was walking back to his apartment, Officer Finch approached him. (*Id.*) Mr. Mallory cursed at him. (*Id.*) Officer Finch then seized Mr. Mallory by the left shoulder as Mr. Mallory began to mount the stairs to his apartment. (*Id.* at ¶ 10.) When Officer Finch asked Mr. Mallory where he was going, Mr. Mallory responded that he was taking his dog back upstairs and going home for the evening. (*Id.*) Officer Finch then told Mr. Mallory that he would take the dog upstairs, and said, "That's it," as he seized Mr. Mallory to handcuff him. (*Id.*) Mr. Mallory claims that he acquiesced and relaxed against the incline of the stairway. (*Id.*) He states that when initially he "mildly resisted" Officer Finch's attempt to handcuff him, Officer Finch pepper sprayed him and then completed applying the handcuffs. (*Id.*) Mr. Mallory also alleges that Officer Finch entered his apartment and did a cursory search of the premises. (*Id.* at ¶ 11.) Afterward, Officer Finch transported Mr. Mallory to the Elkton Police Department, where Mr. Mallory was detained in a holding cell for three hours and released at 6:30 a.m. (*Id.*)

As Officer Finch describes the incident, after Mr. Mallory left the Knights of Columbus Hall, he walked toward Officer Finch's patrol car and began shouting at Officer Finch to "Get!"

(Finch Aff., ECF No. 32-2, ¶ 2.) Mr. Mallory continued shouting at Officer Finch to "Get out!" as he walked upstairs to his apartment. (*Id.* at ¶ 3.) Mr. Mallory appeared to be swaying as he walked and his speech seemed slurred. (*Id.*) Soon after he entered his apartment, Mr. Mallory came back outside and down the stairs with his dog and continued to shout at Officer Finch to leave. (*Id.* at ¶ 4.) After Mr. Mallory contacted the Cecil County Emergency Services 911 Center, Officer Finch exited his vehicle and asked Mr. Mallory if everything was okay. (*Id.* at ¶ 4-5.) Mr. Mallory began shouting at Officer Finch, "You have no fucking business being here!" (*Id.* at ¶ 5.) Officer Finch detected a strong odor of alcohol emanating from Mr. Mallory and observed Mr. Mallory's eyes to be red and watery. (*Id.*) Mr. Mallory insisted that Officer Finch was harassing him and should leave, and began pointing at Officer Finch, shouting, and cursing. (*Id.* at ¶ 6.) Officer Finch advised Mr. Mallory to stop and warned him that if he continued to act in a disorderly manner, he would be arrested. (*Id.*) Officer Finch claims that he was concerned that residents of nearby homes would be disturbed by Mr. Mallory's shouting. (*Id.*) Mr. Mallory again cursed and shouted at Officer Finch; Officer Finch advised him not to do so. (*Id.* at ¶ 7.) Mr. Mallory began walking back toward his apartment and Officer Finch advised him to go inside. (*Id.*) Mr. Mallory stopped, turned around, and shouted, "Stop fucking harassing me!" (*Id.*)

Officer Finch advised Mr. Mallory that he was under arrest. (*Id.* at ¶ 8.) When Officer Finch placed his hands on Mr. Mallory in order to handcuff him, Mr. Mallory tensed his body. (*Id.*) Officer Finch braced Mr. Mallory against the stairs with his back towards Officer Finch. (*Id.*) Mr. Mallory moved his arms underneath him. Officer Finch twice instructed Mr. Mallory to produce his hands and place them behind his back, but Mr. Mallory did not comply. (*Id.*) Officer Finch then placed the can of pepper spray in front of Mr. Mallory's face and told him that he would spray him unless he produced his hands. (*Id.* at ¶ 9.) Mr. Mallory refused. Officer Finch

sprayed Mr. Mallory in his face for approximately one second and instructed him once again to place his hands behind his back. (*Id.*) When Mr. Mallory still did not comply, Officer Finch sprayed his face for two seconds. (*Id.*) Mr. Mallory immediately complied, and Officer Finch placed him in handcuffs, at which time additional officers arrived on the scene. (*Id.*)

Mr. Mallory was issued criminal citations for disorderly conduct and failure to obey a reasonable and lawful order of a law enforcement officer. When Mr. Mallory appeared for his trial date on the charges on November 22, 2010, the State's Attorney entered a *nolle prosequi* as to both counts.

On July 24, 2011, Mr. Mallory filed suit against Officer Finch and the Town of Elkton, alleging violations of his federal constitutional rights under 42 U.S.C. § 1983, the Maryland Declaration of Rights, and various common law causes of action. Pursuant to the court's March 29, 2012 order, Mr. Mallory's claims were bifurcated, such that claims against Officer Finch would be resolved before claims against the Town. Accordingly, the claims currently before the court concern Officer Finch in his individual capacity and consist of federal constitutional claims (Count I) and state law claims arising out of his July 24, 2010 arrest: false arrest (Count II); false imprisonment (Count III), assault (Count IV), battery (Count V), and malicious prosecution (Count VI). Mr. Mallory's federal constitutional claims appear to consist of claims for unreasonable search and seizure and excessive force, in violation of the Fourth and Fourteenth Amendments.

On May 21, 2012, Mr. Mallory filed a motion for extension of time to file Rule 26 expert disclosures and modify the scheduling order. Mr. Mallory attributes his failure to meet the April 9th deadline for filing such disclosures to his and his counsel's father's illness, his counsel's father's subsequent death, and illness on the part of his physician, whom he intended to call as a

medical expert. The defendants oppose the motion on the grounds that Mr. Mallory failed to make a showing of good cause for the extension. They claim that Mr. Mallory failed to account for the delay in designating experts, the delay was excessive, and defendants were unfairly prejudiced.

On June 8, 2012, Mr. Mallory passed away from esophageal cancer. On July 27, 2012, Officer Finch filed a motion for summary judgment as to all six counts against him and a motion to dismiss for failure to respond to discovery requests and failure to prosecute. Officer Finch argues that Mr. Mallory cannot create a dispute of fact regarding any issue because he was never deposed and the affidavit he submitted before his death is inadmissible hearsay. Officer Finch also claims that he is entitled to qualified immunity as to the § 1983 claim and that he had probable cause to arrest Mr. Mallory and used reasonable force. Finally, Officer Finch argues that he is entitled to public official immunity as to Mr. Mallory's state law claims because Mr. Mallory cannot demonstrate malice.

In his motion to dismiss, Officer Finch claims that Mr. Mallory had not served any responses on the defendants since he was served with written discovery in October 2011, in violation of Rule 37(d)(3). Officer Finch argues that now that Mr. Mallory has passed away, there is no possibility that he will answer discovery requests. Officer Finch also points to Rule 41(b), arguing that Mr. Mallory has not propounded written discovery or noted any deposition, and that he has violated the court's scheduling order by failing to respond to discovery requests and to designate expert witnesses. Mr. Mallory responds that he served answers to interrogatories, supported by affidavit, on or about May 10th, and he requested discovery documents on May 22nd and 29th. In reply, Officer Finch acknowledged receipt of the interrogatory answers, but noted they were seven months late and that no documents had been

produced. On August 11, 2012, Mr. Mallory filed a motion to strike Officer Finch's motion to dismiss and to substitute Patricia Adams Mallory, Mr. Mallory's widow, as plaintiff. Finally, Mr. Mallory filed a cross-motion for summary judgment on August 13, 2010.

## ANALYSIS

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

*Discussion*

Officer Finch claims that he is entitled to qualified immunity with respect to Mr. Mallory's § 1983 claim and to public official immunity with respect to Mr. Mallory's state law claims. Mr. Mallory counters that Officer Finch lacked probable cause and used excessive force to arrest him. The court need not decide these issues, however, because Mr. Mallory can present no evidence to create a dispute of material fact "such that a reasonable jury could return a verdict" for Mr. Mallory if the case went to trial. *Anderson*, 477 U.S. at 248.

Mr. Mallory is deceased and was never deposed in this case. Officer Finch argues that any attempt to introduce affidavits made by Mr. Mallory prior to his death would be inadmissible hearsay because Mr. Mallory is the only witness to his version of the events and cannot testify to the substance of his affidavits. Mr. Mallory's counsel responds that Mr. Mallory believed his death to be imminent when he offered, in writing, a statement under penalty of perjury in response to the defendants' interrogatories. Mr. Mallory's counsel claims that this statement would be admissible under the dying declaration exception to the hearsay rule.

The court agrees with Officer Finch. Under Federal Rule of Evidence 804(b)(2), a dying declaration is admissible as an exception to the prohibition against hearsay only if: 1) the declarant is unavailable; 2) the declarant made the statement while believing death to be imminent; and 3) the statement was about the cause or circumstances of the declarant's death. "To make out a dying declaration, the declarant must have spoken without hope of recovery and in the shadow of impending death." *Shepard v. United States*, 290 U.S. 96, 99 (1933). The declarant's state of mind is decisive: he "must have spoken with the consciousness of a swift and

7

certain doom." *Id.* at 100. Fear or belief that illness will ultimately end in death is insufficient to make a dying declaration; rather, "[t]here must be 'a settled hopeless expectation' that death is near at hand, and what is said must have been spoken in the hush of its impending presence." *Id.* (internal citations omitted); *see also Sternhagen v. Dow Co.*, 108 F. Supp. 2d 1113, 1118 (D. Mont. 1999) (holding that plaintiff's sworn statement, in which he indicated plans to work if his condition improved, did not support a belief in "imminent" death and thus did not fall within the dying declaration exception).

In the present case, there is nothing in the record to indicate that Mr. Mallory believed his death was imminent when he read, approved, and signed his answers to interrogatories on or about May 7, 2012, one month before his death from esophageal cancer. On the contrary, Mr. Mallory's answers to the defendants' interrogatories indicate that he believed he would be taking various actions in the future, such as supplementing his answers and meeting with experts. (*See* Mallory Aff., ECF No. 34-2, 2, 12.) Although Mr. Mallory's wife submitted an affidavit two months after Mr. Mallory's death in which she stated that he "was under the belief, fully aware of the advanced, end-stage progress of his disease, that his death was imminent," (Mallory Aff., ECF. No. 34-4, 1) there is nothing in Mrs. Mallory's affidavit to show that Mr. Mallory believed death would occur "almost immediately and not just as the ultimate result of [his] illness." *See Sternhagen*, 108 F. Supp. 2d at 1117. Moreover, Mr. Mallory's answers do not directly relate to the cause or circumstances of his death. In fact, Mr. Mallory acknowledges that he was suffering from pre-existing asthma and esophageal cancer at the time of his arrest. (ECF No. 34-2, 7, 10.) He also concedes that "[t]he causative relationship between dispensation of pepper spray and the esophageal and lung cancer is not entirely clear." (*Id.* at 11.) It is evident, then, that Mr. Mallory's affidavit does not meet the requirements of the dying declaration exception to the rule

against hearsay. Because Mr. Mallory cannot show that any evidence he might use to create a material dispute of fact at summary judgment will be admissible at trial, the court must grant Officer Finch's motion for summary judgment. Accordingly, all other pending motions will be denied.

A separate Order follows.

__December 7, 2012____           _____/s/_____
Date           Catherine C. Blake
         United States District Judge

9